IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 50693

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) Filed: November 1, 2024 |
| Plaintiff-Respondent, | ) |
| | ) Melanie Gagnepain, Clerk |
| v. | ) |
| | ) THIS IS AN UNPUBLISHED |
| ANTHONY JAMES | ) OPINION AND SHALL NOT |
| TUSO-GUERRERO, | ) BE CITED AS AUTHORITY |
| | ) |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fourth Judicial District, State of Idaho, Ada County. Hon. Gerald F. Schroeder, District Judge. Hon. Kira L. Dale, Magistrate.

Decision of the district court, on intermediate appeal from the magistrate court, affirming order for restitution, affirmed.

Erik R. Lehtinen, State Appellate Public Defender; Ben P. Greevy, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Raúl R. Labrador, Attorney General; Kale D. Gans, Deputy Attorney General, Boise, for respondent.

---

MELANSON, Judge Pro Tem

Anthony James Tuso-Guerrero appeals from a decision of the district court, on intermediate appeal from the magistrate court, affirming an order for restitution. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Tuso-Guerrero set off a firework, which caused a fire on public land managed by the United States Department of the Interior, Bureau of Land Management (BLM). The fire was known as the "Hartley" fire. Tuso-Guerrero was charged with misdemeanor firing timber or prairie lands. I.C. § 18-7004. He pled guilty, and the State filed a request for restitution for the costs incurred by the BLM to contain and suppress the fire. After a hearing and written closing arguments, the

1

magistrate court ordered restitution in the amount of $27,258.27. Tuso-Guerrero appealed to the district court, which affirmed. Tuso-Guerrero again appeals.

## II.

## STANDARD OF REVIEW

Idaho Code Section 19-5304(2) authorizes a sentencing court to order a defendant to pay restitution for economic loss to the victim of a crime. The decision of whether to order restitution, and in what amount, is within the discretion of a trial court, guided by consideration of the factors set forth in I.C. § 19-5304(7) and by the policy favoring full compensation to crime victims who suffer economic loss. *State v. Torrez*, 156 Idaho 118, 119, 320 P.3d 1277, 1278 (Ct. App. 2014); *State v. Bybee*, 115 Idaho 541, 543, 768 P.2d 804, 806 (Ct. App. 1989). Thus, we will not overturn an order of restitution unless an abuse of discretion is shown. *Torrez*, 156 Idaho at 120, 320 P.3d at 1279. When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *State v. Herrera*, 164 Idaho 261, 270, 429 P.3d 149, 158 (2018).

## III.

## ANALYSIS

For an appeal from the district court, sitting in its appellate capacity over a case from the magistrate court, we review the record to determine whether there is substantial and competent evidence to support the magistrate court's findings of fact and whether the magistrate court's conclusions of law follow from those findings. *State v. Korn*, 148 Idaho 413, 415, 224 P.3d 480, 482 (2009). However, as a matter of appellate procedure, our disposition of the appeal will affirm or reverse the decision of the district court. *State v. Trusdall*, 155 Idaho 965, 968, 318 P.3d 955, 958 (Ct. App. 2014). Thus, we review the magistrate court's findings and conclusions, whether the district court affirmed or reversed the magistrate court and the basis therefor, and either affirm or reverse the district court.

Idaho Code Section 19-5304 provides that, unless a trial court finds that restitution would be inappropriate or undesirable, it shall order a defendant found guilty of a crime which results in economic loss to the victim to make restitution to the victim. A victim includes a person or entity

who suffers economic loss or injury as a result of the defendant's criminal conduct. Economic loss includes direct out-of-pocket losses or expenses resulting from the criminal conduct and "shall be based upon the preponderance of the evidence submitted to the court by the prosecutor, defendant, victim or presentence investigator." I.C. § 19-5304(6). Tuso-Guerrero does not deny that the BLM is a victim in this case or that his conduct caused economic loss to the BLM. He only appeals the amount of restitution ordered by the magistrate court, arguing that the evidence presented to support certain labor and fleet costs was insufficient. Specifically, Tuso-Guerrero argues that there was insufficient evidence from which the magistrate court could have determined which costs would have been incurred by the BLM had there been no fire and that it was therefore impossible to determine, by a preponderance of the evidence, the damages resulting from Tuso-Guerrero's conduct.

At the restitution hearing, a management and program analyst in BLM's fire management division was called as a witness for the State. She testified that her job duties include preparation of a budget and that she is an "incident business specialist which deals with emergency policies of wildland fire" and that she is "responsible for interagency fire cooperative agreements, the billings and payments to states, and the trespass expense summary creations." She had created an incident expense summary for the fire, which was admitted in evidence. That exhibit (State's Exhibit 1/Defendant's Exhibit A) as well as other exhibits were admitted at the hearing by stipulation. The exhibits included BLM labor reports for the fire, individual employee time reports for the BLM employees who were fighting the fire, and equipment utilization reports for equipment used for fighting the fire. The witness testified that the labor costs shown on the incident expense summary were "actual expenditures from our agency financials" and that the fleet costs were "a combination of both the fixed costs and the utilization for the individual vehicles that were on the incident." The witness explained that she used "the actual expenditures from our financial system." On cross-examination, she testified that a "010" time code was used for an employee's base hours and that, if the fire had not occurred, an employee would have been paid "at least their base hours." She also testified that the labor costs claimed did not "include any regular time with the accounting code 010." The incident expense summary identified labor expenditures of $17,836.22 and fleet expenditures of $12,813.03.

3

At the restitution hearing, the magistrate court expressed an intention to award restitution only for expenses which would not have been incurred had there been no fire. The magistrate court requested closing argument on that issue, which was submitted in writing by both parties. Regarding the labor expenditures, the magistrate court found:

> The labor costs associated with suppressing the Hartley Fire total $17,836.22. This total does not include any "regular time" with the accounting code "010." Rather, it includes only overtime, hazard pay, and a premium associated with the labor costs. This amount represents the labor costs the BLM incurred as a result of the Hartley Fire; it does not include the labor costs that the BLM would have incurred absent the Hartley Fire.

As to fleet expenditures, the magistrate court found:

> The fleet costs associated with suppressing the Hartley fire total $9,578.10. This amount does not include fixed operating rate ("FOR") expenses. It includes only the use rate associated with the vehicles assigned to the fire. These are the costs associated with using the vehicles (including fuel); it does not include fixed costs that the BLM would have incurred absent the Hartley Fire.

Substantial evidence is "relevant evidence as a reasonable mind might accept to support a conclusion." *State v. Straub*, 153 Idaho 882, 885, 292 P.3d 273, 276 (2013). The evidence presented to support the State's claim for restitution was presented in a somewhat perfunctory manner. On direct examination, the witness was only asked about the expense summary she had prepared. There was no testimony offered to explain how the other exhibits (which supported the claim for restitution) related to the summary. However, it is plain from the record (and from the cross-examination of the witness) that the BLM labor reports (Exhibits B and C) form the basis for the labor portion of the claim. When the labor amounts in those exhibits are totaled the result is $17,836.22--the amount of the claim for labor. Furthermore, Exhibits E through N appear to be crew and individual time reports related to the BLM labor report. The magistrate court found that the claim for $17,836.22 did not include employees' regular time. In fact, the claim for labor expenses did include one entry coded "010" in the amount of $156.05. Accordingly, the correct amount of labor expenses excluding employees' regular time was $17,680.17.[1] In any event, the

---

[1] This adjustment does not affect the restitution award because, ultimately, the State sought the correct amount and the magistrate court's restitution award of $27,258.27 reflects labor expenses of $17,680.17 and fleet expenses of $9,578.10.

award of labor expenses was supported by testimony that the "010" time code was used for employees' base hours and that, if the fire had not occurred, employees would have been paid "at least their base hours" and that the labor costs claimed did not "include any regular time with the accounting code 010." The award of restitution of $17,680.17 for labor expenses is supported by substantial and competent evidence.

Similarly, as to fleet expenses incurred for the fire, on direct examination the BLM witness was only asked about the summary she had prepared on direct examination. But Exhibit O (a BLM fleet report) lists the use rate for equipment separately from the "FOR" (fixed operating rate) and there are separate records (Exhibits P through Z) which show starting and ending miles and/or hours for each vehicle. Those records were discussed in some detail on cross-examination. It appears that the magistrate court arrived at the $9,578.10 fleet expenditure by subtracting the $3,234.93 fixed operating rate from the total $12,813.03 fleet claim. Restitution for fleet expenses in that amount incurred as a result of the fire is supported by substantial evidence.

## IV.

## CONCLUSION

An award of restitution in the amount of $27,258.27 is supported by substantial evidence, and Tuso-Guerrero has failed to demonstrate that the magistrate court erred in its decision. Accordingly, we affirm the decision of the district court, on intermediate appeal from the magistrate court, affirming the order for restitution.

Chief Judge GRATTON and Judge TRIBE, **CONCUR**.